SAFETY INSURANCE COMPANY *VS.* MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY & another.[1]

No. 01-P-691.

Suffolk. January 17, 2003. - May 13, 2003.

Present: BECK, GELINAS, & KANTROWITZ, JJ.

*Insurance,* Motor vehicle insurance, Motor vehicle personal injury protection benefits, Subrogation. *Massachusetts Bay Transportation Authority,* Insurance.

In a tort action by an insurer, as subrogee of its insured, who owned and operated a vehicle in which a passenger was injured when the vehicle was struck by a bus owned by the Massachusetts Bay Transportation Authority (MBTA) due to the negligence of the driver of the bus, against the MBTA and the bus driver for reimbursement of personal injury protection (PIP) monies the insurer had paid to the injured passenger, the judge correctly allowed the insurer's motion for summary judgment on the ground that the insurer was entitled to seek subrogation for PIP benefits paid because, as the MBTA was not required to obtain, and in fact did not have, PIP insurance on its vehicle, it could not avail itself of the statutory exemption from PIP subrogation found in G. L. c. 90, § 34M, and on the ground that, even if the subrogation rights set forth in § 34M were unavailable against the MBTA, the insurer would still be entitled to obtain subrogation as a matter of equity. [101-103]

CIVIL ACTION commenced in the Boston Municipal Court Department on June 8, 1999.

Following removal to the Superior Court Department, the case was heard by *Gordon L. Doerfer,* J., on motions for summary judgment.

*James J. Condon, Jr.,* for the defendants.

*Charles C. Gale* for the plaintiff.

KANTROWITZ, J. "Navigating the tortuous twists of automobile insurance law poses a challenge at least equal to that faced by the uninitiated driver on his first foray into the streets of

[1]Alan Gay.

Boston." *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450, 452 (1985). Taking yet another journey down that twisted road, we examine whether an insurer, Safety Insurance Company (Safety), having paid personal injury protection (PIP) benefits, has the right of subrogation against the Massachusetts Bay Transportation Authority (MBTA). The motion judge concluded that the right of subrogation exists. In the absence of a clear legislative mandate otherwise, we affirm.

*Background.* On January 7, 1997, Alan Gay, the operator of an MBTA bus, collided with a vehicle owned and driven by Safety's insured, Wendell Dorsett. The accident was caused solely by the negligence of Gay, who was acting within the scope of his employment with the MBTA. The passenger in Dorsett's car, Levon Matthews, was injured. Safety, to satisfy its contractual obligation to Dorsett as his PIP carrier, paid $2,022.02 to or on behalf of Matthews as a result of his injuries.[2]

On May 8, 1998, Safety brought an action in tort, as subrogee of Dorsett, against the MBTA and Gay for reimbursement of the PIP monies Safety paid to the injured passenger Matthews.[3] Cross motions for summary judgment were filed and heard. Safety's motion was allowed; the MBTA's motion was denied. The motion judge found that Safety may seek subrogation for PIP benefits paid because, as the MBTA is not required to obtain, and in fact does not have, PIP insurance on its vehicle, it cannot avail itself of the statutory exemption from PIP subrogation found in G. L. c. 90, § 34M. The motion judge further opined that even if the subrogation rights set forth in G. L. c. 90, § 34M, were not available against the MBTA, Safety would be able to obtain subrogation as a matter of equity.

The MBTA argues that it is exempted from the entire no-fault insurance statute, citing G. L. c. 90, §§ 1A[4] & 34A, and, as a

---

[2]The parties agree that Matthews was injured in the accident and sustained $2,022.02 in reasonable and necessary medical expenses.

[3]Suit was originally brought in the Boston Municipal Court, where the MBTA's motion to dismiss was allowed on the grounds that it was exempt, pursuant to G. L. c. 90, § 1A, from G. L. c. 90, § 34M, which allows for subrogation. Safety then removed the case to Superior Court.

[4]General Laws c. 90, § 1A, provides in relevant part that "[n]o motor vehicle or trailer, except . . . one owned by a *street railway company* under

result, is exempted from making subrogation payments to Safety for PIP benefits paid under G. L. c. 90, § 34M.

Safety counters that, while under § 1A, the MBTA is exempt from carrying insurance or posting a bond, that exemption does not extend to all provisions of the no-fault insurance scheme, and that the MBTA is not exempt from PIP subrogation pursuant to G. L. c. 90, § 34M.

*Discussion.* Both parties acknowledge, and rightfully so, that the MBTA, being a street railway company and political subdivision, is exempted from carrying liability insurance or posting a bond. See G. L. c. 90, §§ 1A, 34A. So too, it is evident that the MBTA is not required to carry PIP. See G. L. c. 90, § 34M. Exclusion from carrying PIP, however, does not necessarily extend to exemption from claims based on rights of subrogation.

The PIP benefit, embodied in G. L. c. 90, § 34M, is a key element of no-fault insurance. *Pinnick* v. *Cleary*, 360 Mass. 1, 6 (1971). Personal injury protection benefits entitle "owners and operators [and their passengers[5]] of motor vehicles insured under that scheme who are injured in accidents . . . to immediate payment of their actual costs . . . and in exchange surrender, to a limited extent . . . their right to recover damages in tort actions." *Chipman* v. *Massachusetts Bay Transp. Authy.*, 366 Mass. 253, 256-257 (1974). See G. L. c. 90, § 34M.

Section 34M also provides for a limited tort immunity. "The clear meaning of this language [providing for limited tort immunity] is that the exemption from liability runs only to a tortfeasor to whom PIP benefits apply." *Vieira* v. *Schupp*, 383 Mass. 739, 742 (1981). The MBTA is a tortfeasor to whom PIP benefits do not apply. It logically follows, then, that because the MBTA is not required to provide PIP benefits, it "do[es] not benefit from the statutory exemption, and the plaintiff's action against

public control, or by the commonwealth or any political subdivision thereof, shall be registered under sections two to five, inclusive, unless the application therefor is accompanied by a certificate as defined in section thirty-four A or unless the registrar is otherwise satisfied that the provisions of compulsory motor vehicle liability insurance, have been met for such applicant and vehicle." G. L. c. 90, § 1A, as amended through St. 1992, c. 133, § 444.

[5]See G. L. c. 90, § 34A.

them is not limited. Cf. [*Chipman* v. *Massachusetts Bay Transp. Authy.*, *supra* at 257].''[6] *Ibid.*

The statute specifically provides that ''[a]ny insurer paying benefits in accordance with the provisions of this section [here, Safety] shall be subrogated to that exact extent to the rights of any party it pays [the passenger, Matthews] and may bring an action in tort against any person liable for such damages in tort who is not exempt from said liability [the MBTA because it does not have the benefit of the limited tort liability] as a result of the provisions of this section.'' G. L. c. 90, § 34M. See *Safety Ins. Co.* v. *United States Post Office*, 32 F. Supp. 2d 484, 484-485 (D. Mass. 1999). See also *Pinnick* v. *Cleary*, 360 Mass. at 26. Since the MBTA, as the entity liable for damages, is not exempt, Safety should be allowed the right of subrogation against it for the amount of PIP benefits that it paid out.[7]

The result we reach furthers the legislative goal of reducing the cost of automobile insurance. ''The desired effect of [the statute] on all motorists alike is initially to make available to them compulsory insurance at lower rates due to the savings to insurance companies in administrative expenses and total payments which are expected to follow from [the statute].'' *Pinnick*

---

[6]The MBTA cites *Chipman* in support of its argument, pointing to the following language in the case: ''[T]his defendant [the MBTA] and this plaintiff [who did not have PIP coverage] are beyond the scope not only of [PIP] coverage but also of *every* aspect of the no-fault insurance scheme'' (emphasis original). *Chipman* v. *Massachusetts Bay Transp. Authy.*, 366 Mass. at 258-259. The court, however, placed significant limitations on its holding. ''[W]e wish to emphasize that this decision is restricted to the facts of this case. All that we have decided today is that a plaintiff who has no recourse to [PIP] benefits is not barred by G. L. c. 231, § 6D, from recovering damages for pain and suffering when the uninsured defendant is expressly exempted from the no-fault scheme by [G. L.] c. 90, § 1A.'' *Id.* at 260.

[7]''The law provides, however, that insurers that pay out PIP benefits 'shall be subrogated to that exact extent,' allowing them to bring an action against 'any person liable for such damages in tort who is not exempt from said liability as a result of the provisions of this section.' [G. L. c.] 90, § 34M. A person is 'exempt from liability' if he or she is the owner or operator of a motor vehicle 'to which [PIP] benefits apply.' *Id.* In other words, as the Supreme Judicial Court stated in [*Chipman* v. *Massachusetts Bay Transp. Authy.*, 366 Mass. at 257], 'the exemption from tort liability is available to persons who are themselves covered by [PIP] insurance.' '' *Safety Ins. Co.* v. *United States Post Office*, 32 F. Supp. 2d at 485.

v. *Cleary*, 360 Mass. at 22. By allowing insurance companies to make subrogation claims, they may recoup some of their costs.

Our conclusion may also be reached traveling down an alternate avenue. As the motion judge opined, even if the subrogation rights set forth in G. L. c. 90, § 34M, were unavailable against the MBTA, Safety would still be able to obtain subrogation as a matter of equity.

"Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to recover from two sources, one of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor or loss victim, called the subrogor) against the third, primarily responsible party." *Frost* v. *Porter Leasing Corp.*, 386 Mass. 425, 426-427 (1982). Subrogation facilitates the speedy payment of claims to an injured person, avoids the necessity of engaging in a lengthy, cumbersome and expensive legal battle, and prevents the pitfalls of double recovery or double payment.

Subrogation rights may be reserved by an agreement between the insurer and insured, may, in some instances, arise by implication of law, or may be authorized by statute. *Id.* at 427 & n.4. Here, Safety reserved a right of subrogation by agreement with its insured.[8]

In the end, the issue may be reduced to a rather simple one. If the Legislature had been inclined to exempt the MBTA from subrogation with regard to PIP benefits, it could have clearly stated such an intention. The Legislature did not and, absent that guidance, we will not.

*Judgment affirmed.*

---

[8]The standard Massachusetts automobile insurance policy issued by Safety provides: "Sometimes we may make a payment under this policy to you or to someone else who has a separate legal right to recover damages from others. In that case, those legal rights may be exercised by us. Anyone receiving payment under those circumstances must do nothing to interfere with those rights. He or she must also do whatever is necessary to help us recover for ourselves up to the amount we have paid."

We note that here it was the passenger who made a PIP claim under the driver's insurance policy. In these circumstances, the insurer's right of subrogation is equally applicable to a claim it pays on behalf of a passenger who obtains benefits under the policy.